*In re* MARRIAGE OF KATHY M. PIKTEL, Petitioner and Counterrespondent-Appellee, and DAVID V. PIKTEL, Respondent and Counterpetitioner-Appellant.

Second District   No. 79-488

Opinion filed February 27, 1980.—Rehearing denied April 8, 1980.

W. Elliott Dunn, of Waukegan, for appellant.

Paul S. Chervin, of Waukegan, for appellee.

Mr. JUSTICE UNVERZAGT delivered the opinion of the court:

In this appeal the respondent, David V. Piktel, challenges the provisions of a supplemental divorce decree which require him to pay $100 per week child support plus medical expenses on behalf of his two minor children and to assume payment of the petitioner's attorney fees and awards the household furniture and the parties' equity in the marital home to the petitioner, Kathy M. Piktel.

The respondent contends that the court abused its discretion in ordering him to pay $100 per week—$50 for each of the two minor children—for child support plus medical bills and insurance premiums of $124 per month, and in addition, $75 per month for the wife's attorney fees, since this amounts to more than 50% of his income and does not leave

him with sufficient resources to live on. The respondent claims his net monthly income is only $866 whereas the court's decree requires payment by him on behalf of the wife and two children of about $632, or approximately three-fourths of his net monthly income.

The trial court found that the respondent's net income was approximately $250 per week at the time of the post-decree hearing and that his gross income for 1978 was approximately $15,000. While it appears that even under the trial court's finding the respondent is required to pay out more than half of his net income for support, insurance premiums and accrued debts, the other side of the coin is that the $433 per month the respondent is to pay for support is hardly sufficient for the wife and two children to live on. Due to the poor health and tender age of the children, the wife must be at home most of the time, making it difficult for her to engage in gainful employment.

The respondent also objects to that part of the supplemental decree which awarded the marital home to the petitioner, contending that this amounts to awarding maintenance in another guise and that where maintenance is denied under section 504 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 504) (relating to maintenance) it cannot be granted under section 503 of that Act (Ill. Rev. Stat. 1977, ch. 40, par. 503) (disposition of property) by awarding the marital home to the wife. We find this to be a specious argument when applied to the concrete details of the case before us. There was evidence indicating that the house was purchased several years before the divorce for $20,000 but that it badly needed repairs and that if about $7,000 was spent on it, it might sell for $27,000. The mortgage balance was approximately $16,000 at the time of the hearing, which amount must be deducted from the sales price, plus closing costs, if the house were sold. In addition, there was a $900 balance on a loan made by petitioner's parents to the couple, leaving a net equity of approximately $1,600 to $2,000, if the house was not repaired and was sold under a conventional mortgage. If repaired and sold, it appeared the house would net $2,500 to $3,000 to the sellers after all costs and debts were paid. The net value of the equity in the marital home was thus reduced in significance, since it would have to be split between the two parties.

■■ From the trial court's remarks it appears that the primary consideration inducing the trial court to award the marital home to the petitioner was the desire to provide an adequate, stable and relatively inexpensive dwelling place for the minor children. Under the circumstances of this case, it is obvious that the sensible thing to do was to retain the house while the minor children were very young, thus avoiding the uncertainties, both in costs and environmental qualities, that might arise

in connection with rented living quarters. Since the equity in the house was so small that the sale of the house would provide only a very reduced sum to each party, it appears that retaining the house and awarding it to the petitioner, who would thereafter be liable for maintenance and mortgage payments, was not an abuse of discretion. Nor do we agree that it was an attempt to award the petitioner property in lieu of maintenance—it is clear that the welfare of the children was the motive for the award of the house to the petitioner rather than being an attempt to award her maintenance under another name. We believe the award was within the court's discretion under section 503(c)(4) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(4)), which provides that the court "shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including: * * * (4) the relevant economic circumstances of each spouse when the division of property is to become effective, *including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children."* (Emphasis added.)

■■ As to attorney fees, while it is clear that the respondent has an income which is rather inadequate to his obligations at present, the petitioner is obviously not able to pay these fees. Under the Illinois Marriage and Dissolution of Marriage Act, section 508(a), the court has discretion to order the husband to pay attorney fees incurred by the wife in proceedings under the Act, if the wife is unable to pay them. (*Thomas v. Thomas* (1978), 56 Ill. App. 3d 806.) The petitioner is unable to work consistently because of the demands of the minor children and thus is unable to pay her attorney fees. While the resources of the husband are limited, the court's order in this respect seems to be the only practical disposition possible and it is noted that even if the court's order is adhered to strictly, it will be 14 months before the fees are paid in full.

It is recognized that the trial court's order poses difficulties for the respondent but any lesser support payments to the petitioner would correspondingly increase *her* difficulties. In view of the respondent's limited resources there is no solution satisfactory to both parties but we believe the trial court, on the basis of the evidence presented at the hearing, made as reasonable a disposition of the problem as possible under the circumstances.

The respondent raises a further question relative to a supplemental judgment against him for $320, which is the balance of the support payments in arrears at that time—$600 being due and $280 having been paid. The respondent contends the court erred in rendering judgment in favor of the petitioner for the balance of $320, as that amount should have

been paid to the State of Illinois in accordance with section 704 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 704), providing as follows:

"If maintenance, child support or both, is awarded to persons who are recipients of aid under 'The Illinois Public Aid Code', the court shall direct the husband or wife, as the case may be, to make the payments to (1) the Illinois Department of Public Aid if the persons are recipients under Articles III, IV or V of the Code, or (2) the local governmental unit responsible for their support if they are recipients under Articles VI or VII of the Code. The order shall permit the Illinois Department of Public Aid or the local governmental unit, as the case may be, to direct that subsequent payments be made directly to the former spouse, the children, or both, or to some person or agency in their behalf, upon removal of the former spouse or children from the public aid rolls; and upon such direction and removal of the recipients from the public aid rolls, the Illinois Department or local governmental unit, as the case requires, shall give written notice of such action to the court."

It is noted that the supplemental order of June 11, 1979, did not provide for payment being made to the clerk of the circuit court; however, the judgment of May 3, 1979, provided that support payments were to be made to the Lake County Circuit Court. In order to be technically correct and to provide against any danger of a double payment of the judgment, the case is remanded to the trial court for the purpose of ascertaining the exact status of the petitioner with regard to the Illinois Department of Public Aid and the judgment of June 11, 1979, should be modified as necessary to comport with the requirements of section 704 of the Illinois Marriage and Dissolution of Marriage Act, cited above.

The judgment of the trial court is affirmed except as to the judgment of $320 reflected in the supplemental order of June 11, 1979. With regard to that order, the trial court should modify the judgment as indicated in the above paragraph.

Affirmed in part; reversed in part; and remanded.

SEIDENFELD, P. J., and NASH, J., concur.