*In re* MARRIAGE OF KAREN S. WOODWARD, Petitioner-Appellee, and KENNY J. WOODWARD, Respondent-Appellant.

Third District   No. 79-346

Opinion filed April 29, 1980.

Hamm & Hanna, Ltd., of Peoria, for appellant.

Bradley W. Swearingen, of Moehle, Reardon, Smith & Day, Ltd., of Washington, for appellee.

Mr. JUSTICE STENGEL delivered the opinion of the court:

Respondent Kenny J. Woodward appeals from a property disposition order entered in a marriage dissolution proceeding in the Circuit Court of Tazewell County.

Karen Baker, then 18 years of age, and Kenny Woodward, then 20 years, were married on August 30, 1974. The husband entered Illinois Central College in the fall of 1974 and was a full time student until his graduation from Illinois State Normal University in May of 1977. He worked part-time while in school with total earnings of $17,794 during that time. He is presently employed as a physical education teacher in an elementary school with an annual salary of about $10,700. The wife worked full time throughout the marriage at Caterpillar Tractor Company as a keypunch operator. Her total earnings for the years the husband was in school were $49,838. The couple separated in June of 1978, and she obtained a judgment of dissolution of marriage on December 14, 1978. The couple have no children.

At the hearing on the property disposition, the trial court heard extensive evidence as to the financial circumstances of the parties during their marriage. They maintained joint bank accounts and purchased a $27,300 home in joint tenancy with a down payment of $2,750 from their savings. The parties also purchased numerous items of personal property, including three cars, and incurred an $8,000 debt at Caterpillar Credit Union to finance the car purchases. At the time of the dissolution order, $3,400 remained to be paid. However, one of the automobiles had been wrecked, and the husband had received $3,355 insurance benefits which he was supposed to apply towards the debt. He testified that he had loaned $300 to friends, had spent $150 for personal expenses, and had $2,900 in cash at home. He brought the cash into open court and gave it to the wife's attorney with the understanding that it would be applied to the outstanding automobile loan. The husband also testified that the parties had received $1,050 as an income tax refund in 1978 which was placed in a

joint savings account. He took $525 from that account without his wife's permission, and she bought a sewing machine with the other one-half of the tax refund.

After the parties separated in June of 1978, the husband remained in the marital home and made the mortgage payment of $213 per month. The wife testified that she voluntarily assumed the role of breadwinner when she married and that the husband's earnings were insufficient to cover their living expenses. The automobile loan payments were deducted from her paycheck, and she also has Caterpillar stock in her name valued at $1,500 and $125 in a Christmas Club account.

The parties stipulated to 26 items of marital property, including the home, various appliances and furnishings, and two cars; to nine items of nonmarital property belonging to the wife, and six items of nonmarital property belonging to the husband.

At the conclusion of the hearing, the trial court stated that the wife would get the house since the husband had received a college education. The court also awarded the wife her nonmarital property, the 1972 Chevelle automobile, her Caterpillar stock, and the contents of the residence, including the furniture and appliances that were listed as marital property. She would assume the $500 balance of the automobile loan and the balance of $23,900 due on the real estate mortgage. The husband was awarded his nonmarital property and the 1972 Opel GT automobile. Both parties were barred from receiving maintenance, and each would pay his or her own attorney's fees. The husband has appealed, contending that the trial court erred in failing to award one-half of the real estate and other marital property to him. He relies upon section 503(c) of the Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)), which provides in part:

> "[The court] also shall divide the marital property without regard to marital misconduct in just proportions considering all relevant factors, including:
>
> (1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and non-marital property, including the contribution of a spouse as a homemaker or to the family unit;
>
> (2) the value of the property set apart to each spouse;
>
> (3) the duration of the marriage;
>
> (4) the relevant economic circumstances of each spouse when the division of property is to become effective * * *;
>
> * * *
>
> (7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

*  *  *

(9) whether the apportionment is in lieu of or in addition to maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income."

The husband argues that the down payment for the house was accumulated as a result of his summer work in 1976 and that the residence was purchased through their joint efforts. He also contends that his wife's income is greater than his and that she is in a far superior financial position.

■■ Under the new Act, the legislature provided for an equitable division of property, after consideration is given to certain relevant factors, and Illinois courts have held that an equitable division need not be an equal one. (*In re Marriage of Dietz* (1979), 76 Ill. App. 3d 1029, 395 N.E.2d 762; *Schubert v. Schubert* (1978), 66 Ill. App. 3d 29, 383 N.E.2d 266.) The legislature could have provided for a 50-50 split of marital assets, but instead required the trier of fact to weigh the specified factors. *Stallings v. Stallings* (1979), 75 Ill. App. 3d 96, 393 N.E.2d 1065.

The record before us indicates that the wife contributed substantially more to the acquisition of the marital property than the husband, since her earnings were nearly three times his during the marriage. Also, due to her efforts, he was able to acquire a college degree, thereby increasing his opportunity for future employability and income.

■ The trial court clearly took into account the relevant factors as required by section 503(c) of the Act, and we find that the property division was not contrary to the manifest weight of the evidence. Accordingly, we affirm the judgment of the Circuit Court of Tazewell County.

Affirmed.

BARRY and SCOTT, JJ., concur.