*In re* MARRIAGE OF MARILYN MILLER, Petitioner-Appellee, and ALEX MILLER, Respondent-Appellant.

First District (5th Division)  No. 81—1806

Opinion filed January 28, 1983.

Thomas H. Stern, P.C., of Chicago (Joel S. Ostrow, of counsel), for appellant.

Beermann, Swerdlove, Woloshin, Barezky & Berkson, of Chicago (Miles N. Beermann and Howard A. London, of counsel), for appellee.

JUSTICE MEJDA delivered the opinion of the court:

Respondent Alex Miller appeals from that portion of a judgment for dissolution of marriage dividing marital property and from subsequent orders against him for failure to comply with such provisions. Petitioner has filed a motion to dismiss respondent's appeal.

The issues here presented are: (1) whether the disposition of mari-

tal property was an abuse of discretion and contrary to law; (2) whether the orders relating to contempt are void for lack of jurisdiction; and (3) whether respondent's appeal should be dismissed.

Marilyn (petitioner) and Alex Miller were married in 1963. They have two children, Nathan, born in 1965, and Elissa, born in 1970.

Petitioner completed one year of college and worked from the time of her marriage until Nathan was born. The parties stipulated that petitioner was a full-time homemaker during the period of the marriage. At the time of trial petitioner was employed part-time by a market research firm. In 1980, her gross income was approximately $2,500.

At the time of trial respondent was the president, sole employee and sole shareholder of the Argosy Marketing and Development Corporation (Argosy). He draws a salary of $2,000 per month and, in addition, the corporation pays his rent, provides him with an automobile, and pays for numerous personal living expenses.

On June 22, 1981, the court entered a judgment for dissolution of marriage which provided, in part, for a disposition of marital property as follows:

1. That respondent pay petitioner a sum equal to one-half of the total funds in Argosy, the total funds being not less than $75,000. Payment is to be made within 10 days from the date of entry of the judgment. Respondent is to pay all taxes due thereon.

2. That respondent pay petitioner a sum equal to one-half of the total dollar value of all assets contained in the Argosy Pension and Profit Sharing Trust. Payment is to be made within 10 days from the date of entry of the judgment. Respondent is to pay all taxes due thereon.

3. Petitioner is awarded exclusive use of the marital home until the younger of the parties' children becomes of legal age or has completed her education, whichever occurs last. The property is to remain in joint tenancy. However, if respondent or petitioner dies during the minority of one or both of the children herein, a trust is impressed upon the surviving joint tenant to the extent of one-third of the value of the home, as then determined, "for the benefit of the minor child or children."

At any time prior to the emancipation or completion of education of the younger of the parties' children, whichever is the last to occur, petitioner may choose to sell the marital home or purchase respondent's interest therein. The house must be sold or respondent's interest purchased upon the last of the children's reaching the legal age of emancipation or upon the completion of either child's education,

whichever occurs last. Upon sale of the home, the net proceeds shall be divided equally, giving petitioner credit for mortgage payments made.

4. The parties shall divide equally the entire proceeds, at maturity, of a savings certificate with a face amount of $23,000.

Respondent was also ordered to make child support payments. Both parties were barred from any further claim to maintenance.

The value of each party's share of the assets is as follows:

Petitioner

| | |
|---|---:|
| 50% equity in marital home | $58,000 |
| 50% of certificate of deposit | 11,500 |
| Amount equal to 50% of funds in Argosy | 37,500[1] |
| Amount equal to 50% of funds in Argosy pension plan | 70,000 |
| Home furnishings | 3,000 |
| Savings account | 3,500 |
| Total | $173,500 |

Respondent

| | |
|---|---:|
| 50% equity in marital home | 58,000 |
| 50% of certificate of deposit | 11,500 |
| Remaining 50% of funds in Argosy | 37,500 |
| Remaining 50% of pension funds | 70,000 |
| Checking account | 1,800 |
| Individual Retirement Account | 5,000 |
| Other corporate funds assigned to Alex | 15,000 |
| Total | $198,800 |

Following respondent's failure to produce the requisite funds, on July 6, 1981, the trial court issued a rule to show cause and a restraining order against him. On July 17, 1981, respondent timely filed a notice of appeal of the court's June 22, 1981, judgment and July 6, 1981, order. Subsequently, on July 21, 1981, the trial court held him in contempt of court and stayed sanctions. This court on September 2, 1981, granted respondent's motion to stay enforcement of the judgment. Petitioner's motion to dismiss the instant appeal, alleging that respondent accepted certain benefits of the judgment from which he appealed, was taken for ruling herein.

---

[1]Argosy's assets include approximately $75,000 in cash, accounts receivable of about $6,500 and a 1979 Cadillac. Petitioner is to receive a sum equal to one-half of the total funds in Argosy, which amount is at least $75,000. The figure here, therefore, represents the lowest possible award.

OPINION

The first issue raised by respondent is whether the disposition of property was an abuse of discretion and contrary to law. The distribution of marital property rests within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion. (*In re Marriage of Hellwig* (1981), 100 Ill. App. 3d 452, 426 N.E.2d 1087.) Such an abuse of discretion occurs only where no reasonable person would take the view adopted by the trial court. *In re Marriage of Lee* (1979), 78 Ill. App. 3d 1123, 398 N.E.2d 126.

In the instant case respondent argues not that petitioner received a disproportionate share of the marital assets but that the method of payment is erroneous in law and unworkable in practice. He first contends that the court abused its discretion by requiring him to pay petitioner from funds that do not exist. Respondent states that in order to comply with the order of the trial court, he would be forced either to borrow from Argosy's pension plan or to invade corporate funds. He argues that borrowing from the pension plan is precluded because he is not vested in the plan and has no assets with which to collateralize a loan from the plan and that invasion of corporate funds would have "grave tax consequences." He states that the order of such a large amount in one payment requires him to perform an impossible task and that the length of time allowed for the payment is unreasonable.

■ The judgment required respondent to pay petitioner $107,500 within ten days of the order. The evidence shows that respondent had access to assets in an amount sufficient to comply with the order. The order of the trial court did not require an invasion of corporate assets or an illegal use of the funds in the pension plan. We do not find that the amount of the payment ordered by the trial court or the time allowed therefor were unreasonable. Such matters are discretionary with the trial court; we find no abuse of that discretion.

An unfavorable tax result from a division of property is not sufficient evidence of an abuse of the court's discretion. (*In re Marriage of McMahon* (1980), 82 Ill. App. 3d 1126, 403 N.E.2d 730.) In the instant case respondent's allegation that the trial court's judgment may have "grave tax consequences" is not sufficient proof that the court has abused its discretion. We find no error in the trial court's order.

■ Next, respondent argues that the court erred in purporting to divide the property equally while requiring respondent to bear unknown tax consequences. We note, initially, that there is no requirement that marital property be divided equally between the parties. (*In re Marriage of McMahon; In re Marriage of Lloyd* (1980), 81 Ill. App.

3d 311, 401 N.E.2d 328.) The court is directed to divide the property "in just proportions considering all relevant factors." (Ill. Rev. Stat. 1981, ch. 40, par. 503(c).) In the instant case respondent admits that the court complied with the statute. Second, as stated above, an unfavorable tax result is not evidence of an abuse of the court's discretion. To the contrary, the court may choose which party is required to bear tax consequences. (*In re Marriage of McCune* (1980), 86 Ill. App. 3d 311, 408 N.E.2d 319.) We conclude that requiring one party to bear the tax consequences of a division of property, which requirement may result in an unequal division of property, does not constitute an abuse of discretion.

■ Respondent next argues that the judgment requires him to violate Federal and State law by invading his pension plan and, therefore, represents an abuse of discretion. We find no merit in such argument. The judgment of the trial court ordered respondent to pay "*a sum equal to* one-half (½) of the total dollar value of all assets" contained in the Argosy pension plan (emphasis added). The judgment did not order respondent to transfer one-half of the plan's assets and clearly did not mandate an invasion of the plan itself.

Respondent next contends that the judgment was entered without sufficient evidence being adduced. First, he states that the court divided the pension plan and the corporation without determining their value. He bases his assertion, in part, on one paragraph of the judgment for dissolution of marriage which requires him to submit to petitioner an affidavit prepared by a certified public accountant which sets forth the total value of all assets contained in the pension plan as of June 15, 1981.

■ There is no requirement that the court place a specific value on each item of property (*In re Marriage of Thompson* (1979), 79 Ill. App. 3d 310, 398 N.E.2d 17), but only that there be competent evidence of value and that the court's division of the property be supported by the evidence. (*In re Marriage of Hyland* (1981), 95 Ill. App. 3d 31, 419 N.E.2d 662.) The record in the instant case shows that the court had before it evidence of the value of the assets in the pension plan. The parties stipulated that the value of the pension plan was $136,000 plus earnings. Neither party introduced any evidence to the contrary. Parties will be bound by their stipulations unless such stipulations are shown to be unreasonable, the result of fraud or violative of public policy. (*Hudson v. Safeway Insurance Co.* (1982), 106 Ill. App. 3d 391, 435 N.E.2d 1255; *In re Marriage of Sanborn* (1979), 78 Ill. App 3d 146, 396 N.E.2d 1192.) After agreeing on the value of certain items and failing to introduce evidence to the contrary, respond-

ent cannot argue now for the first time that there was no evidence of value. (*Sanborn.*) The affidavit showing the value of assets contained in the pension plan was required only in order to determine the exact amount to be awarded to petitioner. We conclude that there was sufficient evidence adduced regarding the value of the pension plan and, therefore, we find no abuse of discretion in the award of an amount equal to one-half of its value.

We reach a similar conclusion regarding the award to petitioner of one-half of the value of the assets contained in Argosy. As respondent stipulated to the identity and value of the assets of the corporation, he cannot now claim that there was no evidence of value. (*Hudson; Sanborn.*) Accordingly, we find no abuse of discretion.

■ Respondent also contends that insufficient evidence was adduced regarding the possible tax consequences of the judgment. Our review of the record in the instant case reveals that respondent had sufficient opportunity at trial to introduce evidence of the tax ramifications of the within judgment. Respondent cannot benefit now from his failure to introduce the evidence at trial. (*In re Marriage of Melton* (1981), 93 Ill. App. 3d 338, 417 N.E.2d 220.) We conclude that there was no abuse of the court's discretion.

Respondent next argues that the court abused its discretion in providing for the creation of a trust for the benefit of the minor children, pursuant to section 503(d) of the Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1981, ch. 40, par. 503(d).) In the instant case the judgment provides in part that the petitioner shall have exclusive use of the marital home until the younger of the parties' children becomes of legal age or has completed her education, whichever occurs last, at which time the property must be sold or petitioner must purchase respondent's interest. Until that time the property shall remain in joint tenancy. The judgment further provides that upon the death of either party during the minority of one or both children herein, "a trust is impressed upon the surviving joint tenant to the extent of one-third (1/3) of the value of the home, as then determined, for the benefit of the minor child or children."

■ We disagree with respondent's statement that because the trust would be automatically imposed even if the older child had reached adulthood it therefore requires an *inter vivos* gift to an adult child. A trust which requires an *inter vivos* gift to an adult child, thereby extending the parent's obligation beyond majority, is invalid. (*In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.) The judgment in the instant case, however, does not create such a trust. Although it is possible that the trust would be imposed at a

time when the older child had reached majority, the language of the judgment clearly limits the beneficiaries of the trust to "the minor child or children." The trust does not require a gift to an adult child. In this regard, therefore, the court did not abuse its discretion.

■ A trial court, in determining that a trust should be created pursuant to section 503(d), must, however, initially consider whether such a trust is necessary to "protect and promote the best interests of the children" as required by the statute. (Ill. Rev. Stat. 1981, ch. 40, par. 503(d); *In re Marriage of Dulyn* (1980), 89 Ill. App. 3d 304, 411 N.E.2d 988.) The imposition of a section 503(d) trust is inappropriate absent evidence of a need to protect the interests of the children and, therefore, inappropriately applied to a responsible parent. (*Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 429 N.E.2d 465; *Olsher*.) We find no evidence in the record before us that either petitioner or respondent is irresponsible or likely to ignore the children's financial needs in the future, nor any other necessity for imposition of a trust. We therefore conclude that the trial court exceeded the scope of its discretion in ordering the imposition of a trust under the circumstances described. That portion of the judgment must be reversed.

■ Respondent finally contends that the July 21 order adjudging him in contempt, having been entered after he filed his notice of appeal, is void for lack of jurisdiction in the trial court. However, respondent filed no notice of appeal from the instant order, entered on the return day of the July 6 rule to show cause. The July 21 order adjudged respondent in contempt and stayed sanctions without imposing punishment. This court is without jurisdiction to review the July 21 order in the absence of a notice of appeal therefrom. (See *Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 429 N.E.2d 465.) Moreover, a reviewing court can only consider questions existing when the notice of appeal is filed and has no jurisdiction to consider subsequent proceedings. (*Cygnar v. Martin-Trigona* (1975), 26 Ill. App. 3d 291, 325 N.E.2d 76.) Furthermore, an order adjudging a person in contempt, but not imposing punishment, is not reviewable. (*Valencia v. Valencia* (1978), 71 Ill. 2d 220, 375 N.E.2d 98; *Henry v. Waz* (1976), 35 Ill. App. 3d 752, 342 N.E.2d 433.) We therefore do not reach the validity of the July 21 order which was entered after the notice of appeal had been filed and which order imposed no punishment. The appeal from said order must be dismissed.

■ Respondent's notice of appeal sought reversal of the July 6 order which entered a rule to show cause against him. The trial court made a finding that there was no just reason to delay enforcement or appeal as provided in Supreme Court Rule 304(a) (73 Ill. 2d R. 304(a)).

However, if the order is not final, such finding is not sufficient to confer appellate jurisdiction. (*In re Marriage of Lentz* (1980), 79 Ill. 2d 400, 403 N.E.2d 1036.) In the instant case the rule to show cause was made returnable on July 21 and did not operate to finally dispose of the rights of the parties. On the contrary, the contempt proceeding was set for further hearing on July 21 and left the merits thereof pending. Therefore, the July 6 order was not final when the notice of appeal was filed and is not here reviewable. The appeal therefrom must also be dismissed.

Petitioner has filed with this court a motion to dismiss the instant appeal. She states that respondent has disposed of all his stock in Argosy in exchange for a release from two promissory notes totaling $31,200. Petitioner argues that respondent has accepted the benefits of the judgment and that his actions place petitioner at a distinct disadvantage in the event of a reversal. (See *In re Marriage of Lawver* (1980), 82 Ill. App. 3d 198, 402 N.E.2d 430; *Adams v. Adams* (1976), 44 Ill. App. 3d 656, 358 N.E.2d 734.) Because we affirm the provisions of the judgment apportioning the marital property, we need not further consider the motion.

Accordingly, for the reasons stated above, the judgment is affirmed except as to the provisions thereof for a trust for the children which is reversed; respondent's appeal of the July 6 and July 21 orders is dismissed.

Judgment affirmed in part and reversed in part; appeal dismissed in part.

SULLIVAN and LORENZ, JJ., concur.